**Opinion issued July 23, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00825-CR

———————————

**KYLE AVERY JACKSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1887408**

---

Anthony Marroquin was shot and killed during a home invasion committed by Kyle Avery Jackson, Davon Arrington, and Clavia Laville. Though Jackson was not believed to be the shooter, he was charged as a party to the offense of capital

murder.[1]  The jury found him guilty, and the trial court sentenced Jackson to life in prison without parole.[2]  Jackson appealed.

Jackson now contends on appeal that the trial court committed harmful error by submitting an ambiguous application paragraph on the law of parties and by failing to answer the jury's question about the law of parties.  We affirm.

## Background

On February 3, 2020, Jackson, his girlfriend, Laville, and Arrington drove to Marroquin's trailer to retrieve some of Arrington's property.  Jackson was aware that there was some sort of bad blood between Arrington and Marroquin.  And that Marroquin had damaged Arrington's car.

When they arrived at Marroquin's trailer, Laville remained in the car while Arrington and Jackson approached the door.  Arrington violently kicked the door three times before the frame broke and they obtained entry.  Jackson claimed that he only went in the trailer because he needed to use the restroom.  Once in the trailer, Arrington confronted Marroquin, who had been sleeping on the couch.

What began as verbal threats by Arrington escalated into a physical confrontation.  Jackson told police that Marroquin pulled a knife on Arrington, so

---

[1]     *See* TEX. PENAL CODE § 19.03(a)(2) (defining capital murder).

[2]     *See* TEX. PENAL CODE § 12.31(a)(2) (defining punishment for capital murder).

2

Arrington shot him three times. Jackson claimed that he did not know that Arrington had a gun, but he knew that Arrington was going to Marroquin's trailer to "whoop his ass." Marroquin's body also showed that he had been beaten, kicked, and hit with a hammer.

After Arrington shot Marroquin, a neighbor saw two men carrying items, including a television, out of Marroquin's trailer. The neighbor watched as the men went in and out of the trailer two times before driving away. He then called police and provided a description of the car and the people he had seen.

From the neighbor's information and security footage from a nearby business, police identified the registered owner of the car as Laville's father, who told police that his daughter had been driving the car on the day of the murder. He also told police that Laville was dating Jackson at the time. Having identified Jackson as a suspect, police located surveillance video of him selling Marroquin's cell phone at a kiosk in Walmart. They also found video of Laville attempting to sell Marroquin's Xbox at a nearby GameStop. Arrington was also identified as a suspect. A traffic citation with his name and fingerprints was recovered from the murder scene.

When Jackson was arrested, he initially reported that his involvement was limited to giving Arrington a ride to Marroquin's trailer. He later admitted that he was present in the trailer when Arrington shot Marroquin, and his fingerprints were

3

recovered from the door. Although the neighbor had seen two men removing property from the trailer, Jackson claimed that only Arrington had done so.

Jackson admitted to police that, after the shooting, the trio went to Arrington's grandparents' house. Subsequent investigation showed Arrington being picked up by someone driving Laville's father's car before the murder and returning to his grandparents' house after the murder. A 50-inch television was found in their backyard.

Jackson also admitted to police that after the shooting, he, Arrington, and Laville attempted to sell Marroquin's gaming equipment at two separate GameStop stores before selling his cell phone at Walmart. He said that he, Arrington, and Laville then went to a hotel where they played with the Xbox console that they took from Marroquin but had been unable to sell.

Jackson was charged with capital murder—with the underlying felony alleged to be either robbery or burglary. The jury, after being charged with the law of parties, found Jackson guilty of capital murder. And the trial court assessed punishment at confinement for life.

## Jury Charge on the Law of Parties

In his first issue, Jackson argues that "[t]he trial court erred in submitting an ambiguous application paragraph for party liability that failed to clarify that the

generic term 'offense' referred to the murder, rather than the underlying burglary or robbery."

### *The Indictment and Jury-Charge Provisions*

Jackson was charged with capital murder under section 19.03(a)(2) of the penal code, which provides that a person commits capital murder when "the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation, or terroristic threats." *See* TEX. PENAL CODE § 19.03(a)(2). The indictment alleged that Jackson committed capital murder in the course of committing or attempting to commit either burglary or robbery.

The jury charge included instructions on the law of parties, which allowed the jury to convict Jackson if it determined that he was either a principal or a party to the offense. *See id.* § 7.02(a)(2), (b).

The jury charge contained two different ways that party liability could attach in this case. First, the State could prove that Jackson "acting with intent to promote or assist the commission of the offense, . . . solicit[ed], encourage[ed], direct[ed], aid[ed], or attempt[ed] to aid the other person commit the offense. *See id.* § 7.02(a)(2). Second, the State could prove that "in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators . . . if the offense was committed in furtherance of the unlawful purpose

5

and was one that should have been anticipated as a result of carrying out the conspiracy." *See id.* § 7.02(b).

The abstract portion of the "promote or assist" theory of party liability properly provided:

> [Y]ou must find from the evidence beyond a reasonable doubt that the defendant, Kyle Avery Jackson, with the intent to promote or assist in the commission of the offense of burglary of a habitation or robbery, if any, encouraged, directed, aided, or attempted to aid Davon Arrington, and/or Clavia Laville in shooting Anthony Marroquin, if he did, with the intention of thereby killing Anthony.

The abstract portion of the "conspiracy" theory of party liability also properly provided:

> [O]r you must find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, Kyly Avery Jackson, entered into an agreement with Davon Arrington, and/or Clavia Laville to commit the felony offense of burglary of a habitation or robbery of Anthony Marroquin, as alleged in this charge, and pursuant to that agreement they did carry out their conspiracy, and while in the course of committing said conspiracy, Davon Arrington, and/or Clavia Laville intentionally caused the death of Anthony Marroquin by shooting Anthony Marroquin with a deadly weapon, namely a firearm, and the murder of Anthony Marroquin was committed in furtherance of the conspiracy was an offense that should have been anticipated by the defendant as a result of carrying out the conspiracy[.]

The application paragraph of the "promote or assist theory" of party liability, which appellant challenges in this issue, provided:

> [If] you find from the evidence beyond a reasonable doubt that on or about the 3rd day of February, 2020, in Harris County, Texas, Davon Arrington, and/or Clavia Laville, did then and there unlawfully, while in the course of committing or attempting to commit the burglary of a

6

habitation owned by Anthony Marroquin with the intent to commit or attempt to commit another felony other than theft, intentionally cause the death of Anthony Marroquin by shooting him with a deadly weapon, namely a firearm, and that the defendant Kyle Avery Jackson, with the intent to **promote or assist the commission of the offense**, if any **encouraged, directed, aided or attempted to aid Davon Arrington, and/or Clavia Laville to commit the offense**, if he did, . . . then you will find the defendant guilty of capital murder, as charged in the indictment. (Emphasis added).

The jury charge contained an identical application paragraph for a murder committed during the course of a robbery.

The application paragraph of the "conspiracy" theory of party liability, which is not challenged on appeal, provided:

If you find from the evidence beyond a reasonable doubt that the defendant, Kyle Avery Jackson, and Davon Arrington, and/or Clavia Laville entered into an agreement to commit the felony offense of burglary of a habitation or robbery of Anthony Marroquin, and pursuant to that agreement, if any, they did carry out their conspiracy and that in Harris County, Texas, on or about the 3rd day of February, 2020, while in the course of committing such burglary of a habitation or robbery of Anthony Marroquin, Davon Arrington, and/or Clavia Laville intentionally cause the death of Anthony Marroquin by shooting Anthony Marroquin with a deadly weapon, namely a firearm, and the murder of Anthony Marroquin was committed in furtherance of the conspiracy and was an offense that should have been anticipated by the defendant as a result of carrying out the conspiracy then you will find the defendant guilty of capital murder, as charged in the indictment.

On appeal, Jackson challenges the application paragraphs of the "promote or assist" theory of party liability. Specifically, Jackson argues that, even though the application paragraphs of the "promote or assist" theory of party liability properly required that Arrington or Laville intentionally cause Marroquin's death, it only

7

required that Jackson promote or assist in the commission of *the offense.* Jackson contends that this use of the generic term *the offense*, suggested to the jury that Jackson needed only to have intended to promote and assist the underlying burglary or robbery, but not the murder.

***Standard of Review and Applicable Law***

We review potential jury-charge error using a two-step review to determine whether reversal is required. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005); *Vernon v. State*, 571 S.W.3d 814, 826 (Tex. App.—Houston [1st Dist.] 2018, pet ref'd). We first decide whether error exists in the charge. *Ngo*, 175 S.W.3d at 744. If we determine an error exists, we must next determine whether harm resulted from the error requiring reversal. *Id.* The level of harm necessary for reversal depends on whether the appellant properly objected to the error. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). When, as here, an appellant fails to preserve error, we review the charge error under the "egregious harm" standard articulated in *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984). *See Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza*, 686 S.W.2d at 171).

"Egregious harm is a high and difficult standard to meet, and such a determination must be borne out by the trial record." *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (internal quotation omitted). Neither party bears

the burden to show harm or lack thereof. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). Rather, the appellate court must examine the relevant portions of the entire record to determine whether the appellant suffered actual, as opposed to theoretical harm, as a result of the charge error. *Id.*

When assessing whether an appellant suffered egregious harm as a result of the charge error, courts consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the argument of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Vasquez v. State*, 389 S.W.3d 361, 368–69 (Tex. Crim. App. 2012) (citing *Almanza*, 686 S.W.2d at 171). Errors that result in egregious harm are "those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011); *see also* TEX. CODE CRIM. PROC. art. 36.19 (stating trial court's judgment should not be reversed unless record shows jury charge error was calculated to injure defendant's rights, or unless record demonstrates defendant did not have fair and impartial trial).

It is the trial court's responsibility to deliver to the jury a written charge distinctly setting forth the law applicable to the case. TEX. CODE CRIM. PROC. art. 36.14; *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). The purpose

9

of the charge is to inform the jury of the applicable law and guide them in its application to the facts of the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (internal quotations omitted).

A proper jury charge consists of an abstract statement of the law and the application paragraphs. *Alcoser v. State*, 596 S.W.3d 320, 332 (Tex. App.—Amarillo 2019) (stating that "a jury charge should begin with an abstract paragraph defining the elements of an offense, or defining significant words or phrases, followed by an application paragraph that applies that law to the facts of the particular case"), *rev'd on other grounds*, 663 S.W.3d 160 (Tex. Crim. App. 2022). The abstract paragraphs serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *Id.* at 338. The application paragraphs apply the "pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations." *Vasquez*, 389 S.W.3d at 366. The charge's application paragraphs, not the abstract portion, authorize a conviction. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). Because the application paragraphs specify the factual circumstances under which the jury should convict or acquit, they are often referred to as the "heart and soul" of the jury charge. *Vasquez*, 389 S.W.3d at 367.

Because Jackson did not object to the charge, he must show not only error, but that the error, if any, caused egregious harm. *Jordan*, 593 S.W.3d at 346 (citing *Almanza*, 686 S.W.2d at 171).

***Error or Egregious Harm?***

This Court has considered the argument raised by Jackson—that the application paragraph of the "promote or assist" theory of party liability was erroneous because it required only that the defendant intend the robbery and not the murder—in *Holford v. State*, 177 S.W.3d 454, 460–61 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

In *Holford*, the application paragraph for the "promote or assist" theory of party liability was similar to the one in this case. The application paragraph in that case provided:

> If you find from the evidence beyond a reasonable doubt that . . . [the codefendant] did then and there unlawfully, while in the course of committing or attempting to commit the robbery of [the complainant], intentionally cause the death of [the complainant] by cutting [the complainant] with a deadly weapon, namely, a knife, and that the defendant [], with the intent to promote of assist the commission of the offense, if any solicited, encouraged, directed, aided or attempted to aid [the codefendant] to commit the offense . . . then you will find the defendant guilty of capital murder as charged in the indictment.

*Id.* at 461. Holford, like Jackson here, argued that this instruction allowed the jury to convict him solely on the basis of intending the robbery and not the murder. This Court disagreed, holding that "the charge requires the jury to find that Holford

11

promoted or assisted [the codefendant] in intentionally causing the death of [the complainant], while in the course of committing or attempting to commit robbery." *Id.* "Read logically, the prepositional phrase 'with the intent to promote or assist the commission of the offense' refers to [the complainant's] murder, that occurred 'while in the course of committing or attempting to commit the robbery.'" *Id.* "Likewise, the clause 'solicited, encouraged, directed, aided or attempted to aid [the codefendant] to commit the offense' refers to [the complainant's] murder." *Id.*

We further held, that even if there had been error in the application paragraph, it was not egregious error because (1) the jury charge read in its entirely (including the abstract paragraph) instructed the jury that it had to find that the defendant participated in and intended both the robbery and the murder, and (2) counsel for both the defendant and the State told the jury that it needed to find that the defendant intended the murder, and (3) there was "ample" unchallenged evidence that the defendant was guilty of murder. *Id.*

Nevertheless, Jackson argues that *Holford* is distinguishable because, in this case, the jury sent out a jury note indicating its confusion on the issue. Jackson also contends that the Court of Criminal Appeals implicitly overruled *Holford* in *Nava v. State*, 415 S.W.3d 289 (Tex. Crim. App. 2013).

In *Nava*, the application paragraph on the "promote or assist" theory of party liability provided:

> Now, if you find from the evidence beyond a reasonable doubt that . . . [the codefendant] did then and there unlawfully, intentionally or knowingly commit or attempt to commit felony theft, and while in the course of and the furtherance of the commission or attempted commission of felony the, [the codefendant] did commit an act clearly dangerous to human life, to wit: shooting [the complainant] with a deadly weapon, namely, a firearm and did thereby cause the death of [the complainant], and that the defendant . . . with the intent to promote or assist the commission of the offense, if any solicit, encouraged, directed, aided or attempted to aid [codefendant] to commit the offense . . . then you will find the defendant guilty of murder as charged in the indictment.

*Id.* at 294. Nava, like Jackson here, argued that "the application portion of the charge misled the jury as to what offense, exactly, the defendant's intent had to be directed toward." *Id.* The Court of Criminal Appeals held that "[t]he reference to 'the offense' is ambiguous," *id.* at 294–95, but concluded that the ambiguity was not egregious error. *See id.* at 299—302.

In so holding, the *Nava* court noted that (1) the abstract portion of the charge was correct; (2) "the generic reference to 'the offense' would most likely be construed as referring to the offense depicted by the entire paragraph—felony murder—rather than the underlying theft offense that was only a part of the application paragraph"; (3) reading the charge as Nava suggested would render the conspiracy portions of the charge superfluous; and (4) prosecutors did not argue that Nava could be convicted of felony murder under the "intent to promote or assist" theory of party liability based solely on an intent to commit the theft, but their

arguments on the "conspiracy" theory of party liability were "substantial." *Id.* at 301–02.

As in *Nava* and *Holford*, we find that any ambiguity in the use of the generic term "offense" in the application paragraph of the "intent to promote or assist" theory of party liability did not cause egregious harm in this case. In reaching this conclusion, we consider the entire jury charge, the state of the evidence, the arguments of counsel, and other relevant information in the record. *See Vega v. State*, 394 S.W.3d 514, 521 (Tex. Crim. App. 2013).

### A. *The jury charge*

Here, as in *Nava*, the abstract portion of the jury charge correctly required the jury to find beyond a reasonable doubt that Jackson had the intent to promote or assist, not only the commission of the underlying felony, but also Marroquin's death. *See Nava*, 415 S.W.3d at 300 & n.24; *see also Love v. State*, No 01-22-00203-CR, 2024 WL 3977223, at *6 (Tex. App.—Fort Worth Aug. 29, 2024, pet. ref'd) (mem. op., not designated for publication) ("Because the jury charge incorporated the correctly stated abstract principles into the application paragraph, it did not clearly direct the jury to deliberate in a way that was inconsistent with the law."). And in a jury charge alleging alternative theories of criminal liability, harm must be measured "at least in part, against the likelihood that the jury's verdict was actually based upon an alternative available theory of culpability not affected by erroneous portions of

the charge." *See Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012) (quoting *Atkinson v. State*, 923 S.W.2d 21, 27 (Tex. Crim. App. 1996), *overruled on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002)). In this case, as in *Nava*, the jury was properly charged on the alternative conspiracy theory of party liability.

Finally, as in *Nava*, the jury was charged on lesser-included offenses. If the intent to promote or assist the robbery alone was sufficient to convict Jackson of capital murder, the lesser-included offenses would be unnecessary because Marroquin's death and Jackson's participation in the robbery were largely undisputed. *See Nava*, 415 S.W.3d at 301.[3]

## B. *The evidence and arguments*

Here, like in *Nava*, the evidence at trial supported finding Jackson was guilty as a party under the alternative "conspiracy" theory of party liability. And that even if he did not intend for Arrington to kill Marroquin, there was sufficient evidence that he should have anticipated the murder occurring during the robbery. *See Turner v. State*, 414 S.W.3d 791, 799 (Tex. App.—Houston [1st Dist.] 2013), *aff'd as*

---

[3]     *See also Love v. State*, No 01-22-00203-CR, 2024 WL 3977223, at \*6 (Tex. App.—Fort Worth Aug. 29, 2024, pet. ref'd) (mem. op., not designated for publication) (holding that inclusion of lesser-included offenses "would not have made sense at all" if only necessity to convict appellant of felony murder was that victim died and co-defendant killed him during felony in which appellant participated, both undisputed facts).

*modified*, 443 S.W.3d 128 (Tex. Crim. App. 2014) (holding evidence that appellant was present when codefendant shot complainant, that he stayed with codefendant after shooting, that complainant's property was found in his bedroom supported inference that shooting occurred in furtherance of plan to commit robbery).

Moreover, there was evidence that Jackson should have anticipated the shooting. He was aware of a conflict between Marroquin and Arrington—Marroquin had crashed Arrington's car, and Jackson knew that they had some "beef" with one another and that Arrington wanted to "whoop his ass." Despite this knowledge, Jackson accompanied Arrington to Marroquin's home and watched as Arrington kicked the door in so violently that the frame was later found inside the house. Jackson knew that Marroquin was at home when Arrington kicked in the door. Before the shooting, Jackson admittedly saw Arrington wake Marroquin and provoke both a verbal and physical fight. Jackson said he saw Arrington shoot Marroquin not one, but three times.

There was also evidence that Marroquin was beaten with a hammer and kicked, though the evidence is not clear who wielded the hammer. A neighbor saw two men carrying items out of the house, although Jackson denied doing so. After the murder, Jackson, Arrington, and Laville remained together for several hours. During this time, they went to Jackson's grandparents' house, then drove to two separate GameStop stores to sell the items stolen from Marroquin. They also went

16

to a Starbucks, then to Wal-Mart, where Jackson helped Arrington sell Marroquin's phone. Jackson and his codefendants split the money they got from selling Marroquin's goods, then checked into a hotel where they "chilled" and played the dead man's Xbox.

The inherent dangerousness of participating in a forcible home invasion, in which (1) Jackson knew that Marroquin was at home and had a dispute with the Arrington, and that Arrington wanted to "whoop [Marroquin's] ass; (2) watched as Arrington violently kicked in the door knowing that Marroquin was inside; (3) entered the home with Arrington; (4) watched Arrington provoke a verbal and physical confrontation during which Marroquin was beaten by someone with a hammer; (5) saw Arrington shoot Marroquin three times; (6) continued to assist Arrington by removing property from Marroquin's home; and (7) participated in selling Marroquin's property and splitting the profits, is evidence from which the jury could conclude that Jackson should have anticipated the murder during the course of the violent home invasion.[4] *See George v. State*, 634 S.W.3d 929, 939 (Tex. Crim. App. 2021) (holding that anticipation of violent act by codefendant may arise at any moment during execution of conspiracy, not merely at moment of initial

---

[4] We also note that Jackson does not challenge on appeal the sufficiency of evidence that he should have anticipated the murder.

17

agreement, and that nonparticipation in violent act does not necessarily negate its anticipation).

The arguments of counsel on both sides focused primarily on the "conspiracy" theory of party liability. The record shows that the State's argument consists of 12 pages of reporter's record. Of these 12 pages, four are devoted entirely to whether the shooting was "foreseeable," which is an element of the "conspiracy" theory of party liability. Then, another two pages of the State's argument address whether Jackson "knew what was going to happen," or whether he was "merely present" when the shooting occurred. This argument, too, addresses the foreseeability element of the "conspiracy" theory of party liability. So, in sum, roughly half of the State's entire argument focused the jury on party liability under the "conspiracy" theory, which was properly presented to the jury in both its abstract and application portions.

The defense, too, spent considerable time arguing about the "conspiracy" theory of liability. Specifically, defense counsel argued that "[t]here's nothing" to "show that Kyle Jackson should have anticipated that Davon Arrington was gonna shoot Anthony," and that "Kyle Jackson couldn't have anticipated [that Arrington would shoot Anthony]." Defense counsel explained to the jury that "without that anticipation, all it can be is burglary."

18

Jackson now points to a portion of the State's argument in which the prosecutor states:

> [E]very step [Jackson] takes inside there, every moment he spends rifling through those drawers, every moment there's a punch or a kick, or he holds the door open while somebody brings out a television set, or when he goes and sells the stolen phone and then splits up the proceeds, he's aiding or attempting to go aid this felony. That makes him a party; that makes him guilty of robbery or burglary, and if your guilty of robbery or burglary, and Davon Arrington had the specific intent to kill Anthony, you're guilty of capital murder.

Jackson argues that this argument suggested to the jury that his participation in the robbery or burglary, combined with Arrington's intentional killing of Marroquin, satisfied the elements of capital murder. If considered in isolation, it might. However, the prosecutor had just spent the previous 6 pages of its argument explaining the importance of foreseeability. And the prosecutor also made clear to the jury that Jackson's own actions, not just those of Arrington, were the basis of the capital murder charge when he said, "Anthony Marroquin is dead, shot three times because of his [indicating Jackson] actions, not just Davon Arrington, because of what he did as well."

The evidence and arguments, considered as a whole, lead us to conclude that the jury was not misled into believing that Arrington's intent to commit murder, coupled only with Jackson's participation in the robbery, was sufficient to convict Jackson of capital murder. If that alone were sufficient, the amount of time and evidence the State spent proving foreseeability would have been totally unnecessary

19

because Jackson's participation in the robbery and Arrington's specific intent to kill were not seriously contested issues in the case. *See Sanchez*, 376 S.W.3d at 775 (when evaluating jury-charge error in charge alleging alternative theories of criminal liability, harm must be measured against the likelihood that the jury's verdict was based upon alternative theory of culpability not affected by erroneous portions of charge).

### C. Other relevant information in the record

Jackson argues that both *Holford* and *Nava* are distinguishable because, at one point during deliberations, the jury sent out the following note:

> We are not clear on the party. If there is evidence that a person is a party to a burglary which resulted in a death, do we have to prove that he aided in the killing or is it automatic.

The trial court responded: "Please refer to the charge."

Jackson argues that this fact alone shows egregious harm because it "demonstrates that the jury was actually confused." Jackson contends that the factors relied on in *Nava*, which he concedes are also present in this case, "lose their salience in the face of the jury question showing actual confusion."

The State responds that this note does not, standing alone, indicate egregious harm because the trial court's response—"Please refer to the charge"—pointed the jury back to the charge—which contained a correct statement of the law in the abstract portion of the "promote or assist" theory of party liability, as well as both

20

the abstract and application portions of the "conspiracy" theory of party liability, all which correctly stated the law.

We agree that the trial court's instruction to the jury pointed it back to other portions of the charge that correctly answered its question. We also note that the "aid and assist" application paragraph came before the "conspiracy" application paragraph in the jury charge, thus is it likely that the jury's question was answered when it reached the "conspiracy" application paragraph.

We further note that, as early as voir dire, the State explained to the jury that Arrington's specific intent to commit murder was not sufficient to convict Jackson of capital murder. When explaining party liability to the jury through a hypothetical about a shooter, a getaway driver, and a third perpetrator serving as a distraction, a prospective juror asked if the jury found that the shooter guilty, were the other two perpetrators automatically guilty. The prosecutor responded, "not necessarily," and explained that it had to be reasonably foreseeable to the other two perpetrators that the shooter would use a gun and kill someone during the robbery.

Finally, Jackson points out that this case does not contain direct evidence of Jackson's intent to aid or assist Arrington in murdering Marroquin, while in *Nava*, there was evidence that the defendant said in Spanish, "shoot him." 415 S.W.3d at 301. However, direct evidence of intent is not required, but may be inferred from the circumstances detailed above. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim.

21

App. 1985) ("Intent can be inferred from the acts, words, and conduct of the accused.").

In sum, when considering the jury charge as a whole, the state of the evidence and the arguments of counsel, and other relevant information in the record, we conclude that Jackson has not met the "high and difficult standard" required to show egregious harm. *See Villarreal*, 453 S.W.3d at 433. Accordingly, we overrule issue one.

### Supplemental Written Jury Instructions

In issue two, Jackson argues that "[t]he trial court erred in failing to submit supplemental written instructions when the jury requested clarification on the law of party liability." However, the record shows that Jackson did not object to the trial court's response, nor did he request a supplemental response. Thus, this issue is waived. *See Green v. State*, 912 S.W.2d 189, 192 (Tex. Crim. App. 1995) (holding that appellant's failure to object to trial court's response to jury question presented nothing for review on appeal). Furthermore, for the same reasons that Jackson cannot show egregious harm, he cannot show reversible error. *See* TEX. R. APP. 44.2(b).

We overrule issue two.

## Conclusion

For all of these reasons, we affirm the trial court's judgment.


Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Gunn and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).